AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Motorola-G Stylus 5G Cellular Telephone<br>Case Number: SYS-23-01-0028<br>("Target Device") | Case No. '23 MJ00234 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the **Southern** District of **California**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC § 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of CBP Enforcement Officer Ramon A. Galindo, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

CBP Enforcement Officer Ramon A. Galindo
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
**telephone** *(specify reliable electronic means)*.

Date: Jan. 26, 2023

*Judge's signature*

City and state: San Diego, California       Hon. Daniel E. Butcher, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

    Motorola-G Stylus 5G Cellular Telephone
    Case Number: SYS-23-01-0028
    (**"Target Device"**)

**Target Device** is pictured below and currently in the custody of the United States Department of Homeland Security, Customs and Border Protection, located at 720 E. San Ysidro Blvd., San Ysidro, California 92173.



## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of September 1, 2022, to January 8, 2023:

a. tending to indicate efforts to smuggle undocumented aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of undocumented aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of undocumented aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of undocumented aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code § 1324.

## AFFIDAVIT

I, Ramon A. Galindo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant to search the following electronic device:

> Motorola-G Stylus 5G Cellular Telephone
> Case Number: SYS-23-01-0028
> ("**Target Device**")

as further described in Attachment A and to seize evidence of crime, specifically, violations of Title 8, United States Code, § 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Maria Susana Beltran-Bonilla ("Beltran-Bonilla") for bringing in undocumented aliens for financial gain into the United States (see: United States v. Beltran-Bonilla, 22MJ0064-WVG, S.D. Cal. (2022)). **Target Device** currently in the custody of the United States Department of Homeland Security, Customs and Border Protection (CBP), 720 East San Ysidro Blvd., San Ysidro, California 92173.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by CBP since 2003 and am currently assigned to the San Ysidro, California Port of Entry (POE), Criminal Enforcement Unit. I graduated from the CBP Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I have experience and have received training with respect to conducting

1

investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5.  My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of undocumented aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by undocumented aliens to illegally gain entry or remain in the United States.

6.  During my tenure as a CBP Officer, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of undocumented aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7.  Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle undocumented aliens into the United States from Mexico and transport them throughout the Southern District of California and beyond. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or undocumented aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of undocumented aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and undocumented aliens. For example, drivers and passengers responsible for transporting undocumented aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the undocumented aliens at the border, at which time they receive instructions, including where to pick-up the undocumented aliens for transportation into the United States and where to take the undocumented aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Undocumented aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien

smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. A search of **Target Device** may yield evidence:

    a. tending to indicate efforts to smuggle undocumented aliens from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of undocumented aliens;

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of undocumented aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of undocumented aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On January 8, 2023, at approximately 2:54 A.M., Beltran-Bonilla, a Lawful Permanent Resident of the United States, applied for entry into the United States from Mexico through the San Ysidro POE primary vehicle lanes. Beltran-Bonilla was the driver and registered owner of a 2006 Lincoln Navigator bearing a California license plate (the vehicle). Also present in the vehicle were: Blanca Castaneda-Beltran (Beltran-Bonilla's adult niece and front seat passenger), and two minor children later identified as: A.D.J.A. (8-year-old minor male), and G (2-year-old minor male) in the rear seats. Upon inspection before a CBP Officer, Beltran-Bonilla presented her Lawful Permanent Resident card as her entry document. Castaneda-Beltran presented a California driver's license and started she was a United States citizen. Beltran-Bonilla presented California birth certificate issued

1 | to A.C.B. on behalf of G, and a California birth certificate issued to M.C.N. on behalf of
2 | A.D.J.A. Beltran-Bonilla stated that A.C.B. was her grandson and that she had custody of
3 | him. Castaneda-Beltran stated that M.C.N. was her minor son. Beltran-Bonilla stated that
4 | she and the occupants of the vehicle were going to Lancaster, California with nothing to
5 | declare from Mexico.

6 |     12.    Based on the inspection, the CBP Officer elected to refer the vehicle and its
7 | occupants to secondary inspection. While escorting the vehicle to secondary inspection,
8 | the CBP Officer noticed that the two minor children had difficulty waking up.

9 |     13.    A.D.J.A woke up while in the security office. CBP Officers noticed that
10 | A.D.J.A. had difficulty answering questions regarding basic information contained in the
11 | birth certificate presented on his behalf.

12 |     14.    After further questioning by a CBP Officer, A.D.J.A stated that: his name is
13 | not M.C.N., his true name is A.D.J.A., Castaneda-Beltran is not his birth mother, the 2-
14 | year-old minor male is not A.C.B., the 2-year-old minor male is his cousin named G,
15 | Beltran-Bonilla picked him and G up the evening before, Beltran-Bonilla gave him and G
16 | several doses of NyQuil to make them sleep, both A.D.J.A. and G are Mexican citizens
17 | without lawful documents to enter or reside in the United States, A.D.J.A.'s parents are
18 | living in the United States, and smuggling arrangements were made on their behalf for
19 | $8000.

20 |     15.    Beltran-Bonilla was arrested and charged by complaint with Bringing in
21 | Certain Aliens for Financial Gain in violation of 8 U.S.C. § 1324. A.D.J.A is currently held
22 | as a material witness. G was turned over to the United States Department of Health and
23 | Human Services, Office of Refugee Resettlement. Castaneda-Beltran was released without
24 | charges and the investigation into her involvement in this matter continues.

25 |     16.    **Target Device** was discovered inside Beltran-Bonilla's vehicle and was
26 | seized incident to Beltran-Bonilla's arrest. During the booking process and an inventory of
27 | her personal items, Beltran-Bonilla identified **Target Device** as her cellular telephone.
28

17. A review of Department of Homeland Security records revealed that Beltran-Bonilla began crossing the United States/Mexico Border on a consistent basis through a San Diego area Port of Entry in the vehicle beginning on September 1, 2022.

18. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that Beltran-Bonilla was using the **Target Device** to communicate with others to further the smuggling of undocumented aliens into the United States. Further, in my training and experience, alien smugglers may be involved in the planning and coordination of transporting and smuggling events in the days and weeks prior to an event. Co-conspirators are also often unaware of an alien smuggler's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the aliens. Based on my training and experience, it is also not unusual for individuals, such as Beltran-Bonilla, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on September 1, 2022, up to and including January 8, 2023.

## METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones, tablets, and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now

allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

22. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//
//
//
//

7

## CONCLUSION

23. Based on the facts and information set forth above, there is probable cause to believe that a search of **Target Device** will yield evidence of alien smuggling in violation of Title 8, United States Code § 1324.

24. Because the **Target Device** was seized at the time of Beltran-Bonilla's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device.** As stated above, I believe that the appropriate date range for this search is from September 1, 2022, through January 8, 2023.

25. Accordingly, I respectfully request that this Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Ramon A. Galindo
CBP Enforcement Officer
U.S. Customs and Border Protection

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 26th day of January, 2023.

Honorable Daniel E. Butcher
United States Magistrate Judge

8

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Motorola-G Stylus 5G Cellular Telephone
> Case Number: SYS-23-01-0028
> (**"Target Device"**)

**Target Device** is pictured below and currently in the custody of the United States Department of Homeland Security, Customs and Border Protection, located at 720 E. San Ysidro Blvd., San Ysidro, California 92173.



## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of September 1, 2022, to January 8, 2023:

a. tending to indicate efforts to smuggle undocumented aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of undocumented aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of undocumented aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of undocumented aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code § 1324.